UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN W. TAYLOR, IV, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-353-JD-JEM |
| G. NOLAN, et al., | |
| Defendants. | |

OPINION AND ORDER

John W. Taylor, IV, a prisoner without a lawyer, filed a complaint against Correctional Officers G. Nolan, Miller, and Raglin asserting they violated his First and Eighth Amendment rights when they put rodent feces and urine in his meal trays, opened and gave his mail to another inmate, and labeled him as a snitch, all in retaliation for filing grievances against them. ECF 1. He has also filed a motion for a restraining order. ECF 4. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Taylor, who is an inmate at Westville Control Unit, indicates he filed grievances against the defendants about the prison's unsanitary conditions and their verbal

harassment. ECF 1 at 3, 5. In response to the grievances, he asserts that Correctional Officers Nolan, Miller, and Raglin put rodent feces and urine in his meal trays from February 16, 2025, to February 18, 2025. *Id*. at 4-5. After eating the meals, he became sick, short of breathe, had chest pains, coughed up blood, and vomited. *Id*. at 4. Taylor sought medical help, and while he was being treated, Nolan and Raglin laughed at him and called him a "rat." *Id*. He reported the incident and filed grievances, but he received no response. *Id*.

Initially, Taylor asserts the defendants violated his Eighth Amendment rights by putting rodent feces and urine in his meal trays. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference."). Giving Taylor the inferences to which he is entitled at this stage of the proceedings, he has plausibly alleged Eighth Amendment claims against Nolan, Miller, and Raglin for putting rodent feces and urine in his meal trays from February 16, 2025, to February 18, 2025.

In addition to his Eighth Amendment claim, Taylor asserts a First Amendment retaliation claim against the defendants for giving him trays with rodent feces and urine in them. To assert a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Id*. (citation omitted). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

However, because Taylor is already proceeding on an Eighth Amendment conditions of confinement claim for placing rodent feces and urine on his food trays, allowing him to proceed on a retaliation claim on the same facts is redundant and

3

unnecessary. *See Williams v. Snyder*, 150 F. App'x 549, 552 (7th Cir. 2005) ("The remainder of Williams's substantive legal theories . . . warrant little discussion [b]ecause they all involve the same set of facts . . . they would be redundant even if we found that he stated a claim.); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels"); and *Graham v. Connor*, 490 U.S. 386, 395 (1989) (Analyzing allegations under the most "explicit source[s] of constitutional protection."). Therefore, he may not proceed on a retaliation claim here.

Taylor next asserts that, on March 7, 2025, Nolan and Miller opened and took two pieces of mail he received from the court. ECF 1 at 4. Nolan gave the mail to the inmate who he had previously told that Taylor was a snitch and had a "hit" on the inmate. *Id.* at 3-4. Nolan then allowed the inmate to forge Taylor's signature on a facility correspondence form and take the mail to his cell. *Id.* at 4. When the inmate arrived at his cell, the inmate told Miller he had Taylor's mail. *Id*. In order to cover up Nolan's misconduct, Miller took the mail from the inmate and put it in Taylor's facility mailbag. *Id*. When Taylor received the mailbag, there was no mail in it. *Id*. at 5. Instead, he found copies of an envelope and facility correspondence form with his forged signature on it. *Id*. Taylor confronted Nolan and Miller about their conduct, but they laughed and said they wanted him to "turn up" so that they could "beat his ass." *Id*.

To the extent Taylor asserts Nolan and Miller violated his First Amendment right to send and receive mail when they opened mail sent to him by the court, he has not stated claims against these two defendants. "The Supreme Court has recognized that

4

prisoners have protected First Amendment interests in both sending and receiving mail." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). "Prison regulations or practices that affect a prisoner's legal mail are of particular concern because of the potential for interference with a prisoner's right of access to the courts." *Id.* "Prison regulations or practices affecting a prisoner's receipt of non-legal mail also implicate First Amendment rights and must be reasonably related to legitimate penological interests." *Id.* But "merely alleging an isolated delay or some other relatively short-term, non content based disruption in the delivery of inmate reading materials will not support […] a cause of action grounded upon the First Amendment." *Id.*

Publicly filed court orders are not entitled to heightened constitutional protection in prisons. Taylor refers to the orders the court sent him as legal mail, but court orders do not qualify as legal mail. Constitutionally protected legal mail is defined as letters that are marked with an attorney's name and that provide a warning that the letter is legal mail. *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005) ("[W]hen a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence."). Taylor has not identified any document that qualifies as legal mail. Furthermore, the brief, non-content based disruptions in mail described in the complaint do not rise to the level of a First Amendment violation.

Taylor further asserts that Nolan and Miller opened his court mail and gave it to another inmate in retaliation for filing grievances against them. He also contends that Nolan told the inmate he was a snitch and had a hit on him in retaliation for filing

5

grievances against them. Here, giving Taylor the inferences to which he is entitled at this stage of the proceedings, he has plausibly alleged that Nolan retaliated against him for filing grievances by labeling him as a snitch and by opening his mail and giving it to an inmate on March 7, 2025, in violation of the First Amendment. He has also plausibly alleged that Miller retaliated against him for filing grievances by opening his mail and giving it to an inmate on March 7, 2025, in violation of the First Amendment.

To the extent Taylor's complaint can be read as asserting that Nolan and Miller continued to retaliate against him by mishandling his mail, he has stated a claim for permanent injunctive relief. Therefore, the Warden of Westville Correctional Facility will be added as a defendant and Taylor will be permitted to proceed against him in his official capacity for permanent injunctive relief to house Taylor in such a way that Nolan and Miller are unable to mishandle his mail to the extent required by the First Amendment.

Approximately a month after he filed his complaint, Taylor filed a motion for a restraining order asking the court to prohibit Nolan from handling his mail. ECF 4. He states that, on April 29, 2025, he was taken to the administrative office where Nolan was seated at a table where he had three pieces of his mail from the court, two of which had been opened. *Id.* at 1-2. Taylor asserts that, while Indiana Department of Correction policy mandates that mail be opened and copies of the mail be given to an inmate, Nolan mistakenly failed to copy both sides of his chronological case summary and complaint to give him. *Id*. When Taylor brought this to the attention of prison staff, he was told Nolan had already shred the original copies. *Id*. at 2. Taylor alleges that Nolan

6

not only opened and read his mail from the court, but he then "intentionally messed up the copies impeding [his] access to this court." *Id.*

Despite the title, the motion is, in substance, a motion seeking a preliminary injunction. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). While Taylor asserts that Nolan mishandled his mail on April 29, 2025, he has not demonstrated that he was irreparably harmed. Therefore, his motion (ECF 4) will be denied.

For these reasons, the court:

(1) DENIES the motion for a restraining order (ECF 4);

(2) DIRECTS the clerk to add the Warden of Westville Correctional Facility as a defendant;

(3) GRANTS John W. Taylor, IV, leave to proceed against the Warden of Westville Correctional Facility in his official capacity for permanent injunctive relief to house Taylor in such a way that Correctional Officers G. Nolan and Miller are unable to mishandle his mail to the extent required by the First Amendment;

(4) GRANTS John W. Taylor, IV, leave to proceed against Correctional Officers G. Nolan, Miller, and Raglin in their individual capacities for compensatory and

punitive damages for putting rodent feces and urine in his meal trays from February 16, 2025, to February 18, 2025, in violation of the Eighth Amendment;

(5) GRANTS John W. Taylor, IV, leave to proceed against Correctional Officer G. Nolan in his individual capacity for compensatory and punitive damages for retaliating against him for filing grievances by labeling him as a snitch and by opening his mail and giving it to an inmate on March 7, 2025, in violation of the First Amendment;

(6) GRANTS John W. Taylor, IV, leave to proceed against Correctional Officer Miller in his individual capacity for compensatory and punitive damages for retaliating against him for filing grievances by opening his mail and giving it to an inmate on March 7, 2025, in violation of the First Amendment;

(7) DISMISSES all other claims;

(8) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of Westville Correctional Facility, Correctional Officer G. Nolan, Correctional Officer Miller, and Correctional Officer Raglin at the Indiana Department of Correction with a copy of this order, the complaint (ECF 1), and the motion for a restraining order (ECF 4);

(9) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(10) ORDERS, under 42 U.S.C. § 1997e(g)(2), the Warden of Westville Correctional Facility, Correctional Officer G. Nolan, Correctional Officer Miller, and

Correctional Officer Raglin to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

    SO ORDERED on August 4, 2025

                                       /s/JON E. DEGUILIO  
                                       JUDGE  
                                       UNITED STATES DISTRICT COURT